IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ESTEVEZ V. ARANA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALAN L. ESTEVEZ, APPELLEE,

V.

SHARON ARANA, APPELLANT.

Filed August 2, 2016.    No. A-15-854.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Appeal dismissed.

Jennifer A. Thompson for appellant.

Amy Sherman for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

MOORE, Chief Judge.

INTRODUCTION

Sharon Arana appeals from orders of the district court for Sarpy County, which made certain rulings on Alan L. Estevez' application to prevent child abduction and motion for temporary custody, and denied Arana's motion to vacate the temporary order entered by the court. Because we determine that the temporary order is not a final, appealable order, we dismiss this appeal.

BACKGROUND

*Texas Child Custody Order.*

Alan L. Estevez and Arana are the parents of a minor child born in July 2008. Estevez and Arana were never married. In 2010, a Texas court entered an order (the Texas order) naming Arana

- 1 -

and Estevez as "Joint Managing Conservators" of the child. At all times relevant to the present appeal, Estevez has resided in Minnesota. At the time of the Texas order, Arana resided in Texas and was employed by the United States Air Force. Arana appeared with her attorney for the hearing in the Texas custody proceedings; Estevez did not appear. The Texas order granted Arana "the exclusive right to designate the primary residence of the child without regard to geographic location" and "the right to maintain possession of any passports of the child" subject to "the requirements for delivery" of the child's passport to Estevez upon notice of his intent to travel outside of the United States during a "period of possession" of the child. The Texas order set forth Estevez' periods of "possession of the child" and granted Arana "possession of the child at all other times not specifically designated." Estevez was ordered to pay child support of $222 per month.

In May 2012, the Texas court entered an order finding that it lacked jurisdiction to exercise continuing, exclusive jurisdiction over a custody modification action filed by Arana since the child's home state was other than Texas, and the court dismissed the modification action.

*Nebraska Registration and Initial Modification Proceedings.*

In November 2012, Estevez filed a petition in the Sarpy County District Court for registration, enforcement, and modification of the Texas order. He alleged that Nebraska was a more convenient forum for the case because the child had resided with Arana in Nebraska since September 2010 and sought, among other things, a determination that Nebraska had jurisdiction to register and retain jurisdiction over custody matters with respect to the child. Subsequently, the Texas order was filed by the Sarpy County Clerk of the Court and notice was sent to Arana informing her of her right to contest the validity or enforcement of the registered Texas order.

On November 27, 2012, Estevez filed an application to modify custody in the district court. Neither this pleading nor any of Estevez' pleadings filed prior to July 6, 2015 included a request for removal of the child to Minnesota.

On December 28, 2012, Arana filed an answer and counter complaint. Arana asked for a determination that Nebraska was the child's home state and for modification of the Texas custody order. She sought modification because Estevez had not "followed and abided by" the Texas order, had lacked consistent contact with the child, and had "personal issues which may affect the welfare of the child" and because modification was in the child's best interests.

Subsequently, the parties filed various motions and pleadings not relevant to the present appeal except that on April 1, 2014, Arana filed an amended answer and counter complaint in the district court in which, in addition to her previously stated reasons for seeking modification, she alleged that her employer, the U.S. Air Force, was changing her duty station to Osan AB, South Korea, and that it would be in the child's best interests to modify the Texas order and allow for removal of the child from Nebraska. On May 5, Arana filed a motion for a temporary change in parenting time, asking the court to fashion a temporary parenting plan so that Estevez could see the child and the child could also accompany Arana to Korea from June 2014 until June 2015.

On May 16, 2014, the district court entered an order awarding Arana temporary possession of the child and granting her the right to remove the child to Korea temporarily, subject to the visitation provisions set forth in the order. The court granted Estevez visitation from May 28 to

June 14, for three weeks in December 2014 or January 2015 when Arana returned to the U.S. on leave, and for "the first four weeks" upon Arana's return from Korea. The court granted Estevez one hour of visitation per week via Skype and suspended Estevez' child support obligation from June 1, 2014 until June 1, 2015. The court also granted a motion to continue the previously set trial date in the underlying modification proceedings and set trial for June 2, 2015.

*Appeal in Case No. S-14-443*.

Estevez appealed from the district court's May 16, 2014 order. His appeal was dismissed by the Nebraska Supreme Court for lack of jurisdiction pursuant to Neb. Ct. R. App. P. § 2-107(A)(2). Estevez' motion for rehearing was overruled and the Supreme Court's mandate issued on July 25, 2014.

*Dismissal of Initial Modification Proceedings*.

While Estevez' appeal in case No. S-14-443 was pending and after issuance of the Nebraska Supreme Court's mandate, the parties continued to file pleadings in the modification proceedings, only some of which have been included in the present record on appeal. For purposes of resolving the present appeal, we note Arana's motion filed on June 19, 2015, seeking judgment on the pleadings or, alternatively, dismissal of Estevez' modification complaint for failure to state a claim upon which relief may be granted. She asserted that Estevez' complaint should be "dismissed on Progression Standards," that Estevez had never filed an application for removal of the child from Nebraska, and that she was the "only party with an Application for Removal from Nebraska in this case." She alleged that she would be moving to Bogota, Columbia with the U.S. Air Force and attached a copy of the "REQUEST AND AUTHORIZATION FOR PERMANENT CHANGE OF STATION-MILITARY" for 24 months in Columbia. She alleged that if the court denied her application for removal, there would be no parent residing in Nebraska after she moved and that the court should not "leave a minor child in Nebraska homeless and alone."

On July 6, 2015, the district court entered an order granting Arana's motion, which the court treated as a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). The court found that Estevez had never filed an application for removal and thus had not made a request for relief that the court had the authority to award. Accordingly, the court dismissed Estevez' operative complaint. Arana's operative counter complaint was dismissed by the court in a docket entry on July 8. The parties did not appeal from either of those orders.

*Subsequent Proceedings*.

Following a hearing on a motion and affidavit for an order to show cause filed by Estevez, the district court entered an order to show cause on July 8, 2015, ordering Arana to appear and show cause as to why she should not be held in contempt for failure to follow the court's order of May 16, 2014.

On July 11, 2015, Estevez filed a petition in the district court for expedited enforcement of a child custody determination pursuant to Neb. Rev. Stat. § 43-1255 (Reissue 2008). Estevez alleged Arana had refused to provide him with any contact information upon her return from Korea. He alleged that he did not know the current physical address of Arana and the child and

asked the court to order that the child be returned to and remain in Nebraska so that he could exercise his parenting time pursuant to both the Texas order and the May 2014 Nebraska order. Estevez stated that if Arana was unable to stay in Nebraska or had no responsible adult that the child could stay with, he would immediately relocate to Nebraska and take custody of the child.

In a separate pleading filed on July 12, 2015, Estevez requested the issuance of a warrant pursuant to Neb. Rev. Stat. § 43-1258 (Reissue 2008). In that pleading, Estevez indicated that Arana had been in Alabama and Arizona after returning from Korea, that she was to report to Bogota, Columbia at some point for a 2-year period, and that she had refused to provide specific information about plans to take the child to Columbia, which information should have been provided pursuant to the Texas order. Estevez stated that Arana had denied him parenting time awarded pursuant to the court's May 2014 order. He alleged that Arana was likely to remove the child from Nebraska and the U.S. and take her to Columbia without court approval, and he asked the court to issue a warrant for law enforcement officials to take physical custody of the child and make appropriate arrangements for her placement pending further hearing.

On July 12, 2015, Estevez filed a petition for emergency abduction prevention orders in the district court pursuant to Neb. Rev. Stat. § 43-3901 et seq. (Reissue 2008), the Uniform Child Abduction Prevention Act. Estevez alleged that the child was at imminent risk of removal by Arana to Bogota, Columbia. He alleged that Arana and her spouse had orders from the U.S. Air Force to proceed directly to Columbia after Arana finished certain training in Alabama on July 10 and that Arana had strong familial ties to Columbia. He alleged that Arana had not allowed him to see the child for over a year despite the provisions of the court's May 2014 order and had not provided contact information since returning from Korea. Estevez asked the court for an order stating that the child could not be removed from Nebraska or the U.S. and ordering her return to Nebraska so that he could exercise his parenting time pursuant to the May 2014 order and the Texas order. He asked the court to grant him temporary custody of the child and removal to Minnesota in the event that Arana was unable to stay in Nebraska or the child had no responsible adult with which to stay. Alternatively, he asserted that he would relocate to Nebraska and take custody of the child. Estevez asked the court to employ any or all of the prevention methods set forth in § 43-3908 to protect the child and to issue a warrant to take physical custody of the child as provided for in § 43-3901.

On July 17, 2015, the district court issued an emergency abduction prevention order and ordered Arana to surrender the child's passport. The court found that the child, who may be traveling with or residing with Arana or Arana's husband, was at imminent risk of removal from the U.S. possibly to the country of Columbia. The court found that the child could not be removed from the U.S. by Arana, her husband, or someone acting on their behalf and ordered the child's return to Nebraska. The court indicated that it would set the matter for a full hearing upon the child's return to Nebraska.

Prior to the full hearing on the emergency abduction prevention order, Estevez filed three more pleadings. On July 20, 2015, he filed an ex parte motion for temporary custody and permission to remove the child to Minnesota. In the ex parte motion, Estevez made similar allegations to those set forth in his previous pleadings filed after Arana's return from Korea. In general, he alleged that he had been denied court-ordered parenting time, that Arana intended to take the child to Columbia, and that the parties had a very antagonistic relationship. Estevez asked

the district court to grant him custody of the child and allow him to remove the child to Minnesota on a temporary basis pending trial on his application to modify. On July 20, he also filed a motion seeking to reinstate the previous modification case and to amend his complaint upon reinstatement to request removal of the child to Minnesota and to include facts that had developed since dismissal of the previous modification case. On July 27, Estevez filed a complaint to modify the duly-registered foreign custody order.

On July 28, 2015, a hearing was held on the district court's ex parte emergency abduction prevention order. The transcript reveals that Estevez' attorney delivered the summons and a copy of the complaint to modify on Arana on this date while appearing at this hearing. The record on appeal only includes a very limited partial bill of exceptions from this hearing, which indicates only the date and time, who was present, and the matter to be addressed as stated by the court at the very beginning of the hearing. The portion of the hearing requested for inclusion in the bill ends immediately after Estevez' attorney called him to the stand. We have no indication of what testimony was given by Estevez, whether additional witnesses were called or any exhibits were received, or whether other matters were addressed at the hearing.

On July 30, 2015, Arana filed an ex parte motion, asking the district court to vacate the emergency abduction prevention order and to return the child's passport.

Another hearing was held before the district court on August 11, 2015. Again, we have been provided with only a partial bill of exceptions that gives only a glimpse of what took place at the beginning and end of the hearing, but does not include any evidentiary portion of the hearing or discussions between the court and counsel that might have taken place during the rest of the hearing. The first segment included in the bill indicates the time the hearing began and who was present. The court stated that it was a continued hearing on the emergency abduction prevention order and that the direct examination of Arana had been completed at the previous hearing. This portion of the bill ends as soon as Arana is called to the stand.

The record on appeal includes a supplemental bill of exceptions that begins when the August 11, 2015 hearing resumed later in the day. The transcribed portion of the proceedings that afternoon begins with the following statement by the district court:

Okay. Well, I'm not taking this under advisement.

I disagree with you, [Arana's attorney], because I have to give full faith and credit to the Texas decree. Which means she has the right to serve the location. So I'm going to release the passport.

However, I'm taking into consideration the Motion and Application to Modify the Decree. And, therefore, I'm going to enter the following temporary order[.]

The court then stated that it was taking temporary custody of the child, allowing her to go to Columbia, providing that Estevez was to have daily Skype contact and school break visitation with the child, and suspending Estevez' child support obligation. Additional topics discussed by the parties and the court before the conclusion of the hearing were transportation costs, the mechanism for holding Arana in contempt if she did not comply, and what protection Arana might enjoy "for any contempt on these orders" under the "Uniform Code of Military Justice." At the close of the

hearing, the court reminded Arana that it "ha[d] custody," and Arana and her attorney assured the court that Arana would comply.

On August 14, 2015, the district court entered a "Temporary Order," denying Estevez' application pursuant to the Uniform Child Abduction Act and ordering that the child's passport be returned to Arana. The court also found that "the pending Motion for Temporary [sic] should be considered," and in ruling on that motion, the court placed "temporary custody" of the child with the court, ordered Skype contact between Estevez and the child each day at 7 p.m. for a period of not less than half an hour beginning August 17, and ordered visitation between Estevez and the child from one week after school dismissal to one week before the start of school and also during any period of mid-deployment leave in the U.S. that Arana might have. The court also suspended Estevez's child support obligation and ordered the parties to split the cost of transportation. All other terms of the Texas order were to remain in place. The August 14 order does not contain any indication of a time-frame for the modified provisions made nor is there a notation for a future hearing.

The parties filed several motions after the district court entered its August 14, 2015 order. On August 18, Estevez filed a motion to reconsider temporary orders. He specified the child's school schedule in Columbia and made further requests for parenting time. On August 24, Arana filed a motion, asking the court to vacate the temporary order of August 14 and to retain only the portion of the order denying Estevez' application to prevent child abduction. She also filed a motion for attorney fees, alleging that Estevez' motion to reconsider was a frivolous action. These motions were denied by the court in an order entered on September 14. Arana appealed on September 14.

## ASSIGNMENTS OF ERROR

Arana asserts that the district court erred in modifying the Texas order (1) without notice or opportunity to be heard on a modification and (2) without a complaint to modify properly served on her.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Al-Ameen v. Frakes*, 293 Neb. 248, 876 N.W.2d 635 (2016).

## ANALYSIS

Before reaching the issues raised by Arana's appeal, we first consider Estevez' assertion that this court lacks jurisdiction because the order appealed from was not a final appealable order. An appellate court has the duty to determine whether it has jurisdiction before reaching the legal issues presented for review. *Stevens v. Stevens*, 292 Neb. 827, 874 N.W.2d 453 (2016). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015).

Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015).

The August 14, 2015 order, entitled "Temporary Order," contained two components. First, it denied Estevez' application to prevent child abduction and ordered that the child's passport be returned to Arana. This was a final order as it related to the application to prevent child abduction, however, Arana is presumably not appealing this portion of the order as she ultimately prevailed on that issue. The second portion of the "Temporary Order" considers the pending "Motion for Temporary" (presumably Estevez' ex parte motion for temporary custody and permission to remove the child to Minnesota) and includes various rulings; including placing temporary custody with the court, making provisions with regard to Estevez' Skype contact and visitation with the child, and suspending Estevez' child support obligation. Arana appears to be challenging these provisions, although she is only challenging the lack of notice that such matters would be heard and the lack of proper service of the complaint to modify upon her. She does not assert error with regard to any of the specific provisions. Thus, the question becomes whether these provisions in the temporary order amount to a final, appealable order. The provisions appealed did not determine the action and prevent judgment and were not made on summary application in an action after judgment was rendered. Accordingly, we consider whether those provisions of the order were made during a special proceeding and affected a substantial right.

A proceeding regarding a child custody determination is considered a special proceeding under Nebraska law. *Belitz v. Belitz*, 21 Neb. App. 716, 842 N.W.2d 613 (2014). The temporary order provisions in question concern custody of the child and thus, this was a special proceeding.

Next, we consider whether a substantial right of Arana's was affected. A substantial right is an essential legal right, not merely a technical right. *Pearce v. Mut. of Omaha Ins. Co.*, 293 Neb. 277, 876 N.W.2d 899 (2016). An order affects a substantial right if it affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Id.*

Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *In re Interest of Octavio B.*, 290 Neb. 589, 861 N.W.2d 415 (2015). The Nebraska Supreme Court applied this rule in *Steven S. v. Mary S., supra* in determining whether an order in an ongoing child custody modification proceeding affected a substantial right. At the time of the parties' divorce, they were granted joint legal custody, and the father was granted primary physical custody. Subsequently, the parties both sought a custody modification. They also filed motions seeking temporary custody, among other things. In ruling on the temporary motions, the district court placed temporary legal and physical custody with the father, suspended the mother's visitation, and reappointed a court-appointed psychologist to further evaluate the mother and make a permanent custody recommendation. On appeal, the Nebraska Supreme Court determined that this order did not affect

a substantial right because the order was not a permanent disposition and disturbed the mother's relationship with her children only briefly.

In *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010), a paternity case, the mother was initially given primary custody and was awarded child support. She filed for a modification, seeking increased support. The father filed a cross-complaint, seeking custody while the mother was deployed on active duty. The mother then sought to stay the proceedings under the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501 et seq. (2006). The district court denied the motion to stay and granted the father temporary custody and support, to revert back to the mother after her military deployment period of 400 days. On appeal by the mother, the Nebraska Supreme Court observed that, as in *Steven S. v. Mary S.*, the modification order was contingent upon an outside event, that being in the *Carmicheal* case, the mother's deployment. The Supreme Court found that the modification order did not affect a substantial right because the grant of custody to the father was temporary and would revert to the mother upon her return from active duty.

In *Huskey v. Huskey*, 289 Neb. 439, 855 N.W.2d 377 (2014), the military mother filed a complaint for child support modification and sought an order allowing her to relocate to Georgia for a year due to a temporary military assignment. The father filed a counter-complaint, seeking an award of temporary primary custody during the mother's assignment to Georgia and a permanent modification of custody and child support. The district court granted the mother's request for removal, construing it as a request for temporary removal pursuant to Neb. Rev. Stat. § 43-2929.01 (Cum. Supp. 2012) (concerning changes in parenting time when a custodial parent is temporarily deployed). The district court did not address the father's pending counter-complaint for permanent modification. On appeal by the father, the Nebraska Supreme Court held that because a court may dispense only temporary relief pursuant to § 43-2929.01(4)(a), the Legislature did not intend for a truly temporary order entered under that subsection to be characterized as a final order under § 25-1902. *Husky v. Husky, supra*. The Supreme Court determined that the order in question did not affect a substantial right. The order allowed the mother to relocate with her children for a specified period of less than eight months, maintained the parties' previous custody arrangement, only disrupting the father's right to parenting time which was not substantially reduced under the order, and contemplated further action by the court upon the mother's return. Because the order was truly a temporary order under § 43-2929.01 and because it did not affect a substantial right, it was not a final order under § 25-1902. We note that § 43-2929.01 was repealed by Laws 2014, LB 219, § 35, operative date January 1, 2016. This statute was not applied in the instant case, nevertheless, we find the case to be instructive.

In the present case, the order placed "temporary custody" (presumably meaning temporary legal custody) of the child with the court, specified daily Skype contact between Estevez and the child beginning August 17, 2015, suspended Estevez' child support, ordered the parties to split the cost of transportation, and awarded Estevez visitation during any period of mid-deployment leave to return to the United States that Arana may have. Other provisions of the order required Arana to provide Estevez with the child's address, notify him of changes in the child's address or residence, place Estevez' name on medical and school records to allow him access, and keep him

informed of all medical procedures and "incidences" of the child. The court also ordered the parties to comply with all other provisions of the Texas order not modified by the temporary order.

After reviewing the record, including the court's oral rulings at the conclusion of the hearing on August 11, 2015, it is clear that the Texas order which placed possession of the child with Arana continued in effect and was not altered by the August 14, 2015 order. Arana's right to maintain possession of the child's passport as provided in the Texas order was restored by this order. The only matters that were changed from the Texas order were Estevez' visitation rights, the provision of Skype contact, and the suspension of child support. Although the order does not contain a specific time duration for these provisions, again, it is clear from the record before us that these provisions were fashioned in response to Arana's removal of the child in connection with her deployment to Columbia, which was apparently for a 2-year period. Under these circumstances, we determine that the order did not affect a substantial right of Arana, was intended by the court to be a temporary order during the period of her deployment, and is not a final, appealable order. In reaching this conclusion, we note that the August 14, 2015 order is substantially similar to the May 16, 2014 order entered at the time Arana was being deployed to Korea, the appeal from which the Supreme Court dismissed for lack of jurisdiction. See case No. S-14-443.

## CONCLUSION

The temporary order entered by the court with regard to custody, visitation, and suspension of child support is not a final, appealable order. Therefore, we do not reach Arana's assigned errors.

APPEAL DISMISSED.