In re Interest of Octavio B. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
Melissa R., appellant.
___ N.W.2d ___

Filed April 3, 2015.    Nos. S-14-484 through S-14-489.

1.  **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.

2.  **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

3.  **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4.  **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.

5.  **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings under Neb. Rev. Stat. § 25-1902 (Reissue 2008), and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.

6.  **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7.  **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

8.  **Juvenile Courts: Judgments: Parental Rights.** A review order in a juvenile case does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order.

9.  **Juvenile Courts: Judgments: Appeal and Error.** A dispositional order which merely continues a previous determination is not an appealable order.

10. **Judgments: Parental Rights: Appeal and Error.** An order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights; such an order affects a parent's substantial right in a special proceeding and is appealable.

11. **Juvenile Courts: Parental Rights.** The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with

preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests.

12. **Juvenile Courts: Jurisdiction: Child Custody.** Once a child has been adjudicated under Neb. Rev. Stat. § 43-247(3) (Reissue 2008), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.

13. **Juvenile Courts: Minors: Proof.** The State has the burden of proving that a case plan is in the child's best interests.

14. **Parental Rights.** Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

Appeals from the County Court for Scotts Bluff County: KRISTEN D. MICKEY, Judge. Affirmed.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Dave Eubanks, Scotts Bluff County Attorney, and Kelli L. Ceraolo for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## INTRODUCTION

In each of these consolidated juvenile appeals, the mother presents two issues. First, did changing the primary permanency objective from reunification to adoption affect the mother's substantial right? Because the juvenile court's actions effectively ended services directed toward reunification, we conclude that it did. Thus, the orders were final and appealable. Second, was changing the permanency objective in the children's best interests? The evidence showed that it was. Accordingly, we affirm.

## BACKGROUND

### PARENTS AND CHILDREN

Melissa R. is the mother of the six minor children involved in these juvenile proceedings. The oldest child was born in 1999, and the youngest child was born in 2011. The fathers

of the children are not parties to these appeals and will not be discussed further.

## PRIOR PROCEDURAL HISTORY

In March 2013, the State filed a petition seeking to adjudicate the children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The petition alleged that Melissa failed to provide adequate supervision. Melissa was in jail at the time. On that same day, the county court, sitting as a juvenile court, entered an order removing the children from the home and placing them in the custody of the Nebraska Department of Health and Human Services (DHHS). The State later filed a second amended petition, alleging that the children lacked proper parental care through no fault of Melissa. In May, the court adjudicated the children. Since the time of the dispositional hearing in July, the children have remained in DHHS' custody, and DHHS' case plans have been geared toward reunification.

The juvenile court's first review hearing appearing in our record occurred in October 2013. At that time, Melissa was still incarcerated but had been placed on house arrest since early September. She was working full time and having supervised visitations with the children in her mother's home. The court report noted that poor progress was being made to alleviate the causes of out-of-home placement. In an October 1 order, the court directed the parties to comply with a September 24 case plan. The goal of the case plan was for Melissa to be able to appropriately care for her children and to provide a stable home free of domestic violence and illegal drugs in order to meet the emotional, psychological, and developmental needs of the children. The case plan set forth a number of strategies to assist Melissa in reaching the goal.

In January 2014, the juvenile court held another review hearing. Melissa testified she had been attending "NA," but that she had not started a relapse group prevention class because the class was full. Melissa admitted that because she was upset and emotional, she canceled a visit with the children the night before the hearing. During a recess in the hearing, she submitted to a urinalysis—which tested positive

for methamphetamine. The court adopted DHHS' January 7 court report and case plan. The report stated that fair progress was being made to alleviate the causes of out-of-home placement. The plan contained the same goal and strategies identified in the September 2013 case plan. The court additionally ordered random drug testing and a new psychological evaluation and parenting assessment by Dr. John Meidlinger. The court ordered Melissa to follow the recommendations of the substance abuse evaluation, the psychological evaluation, and the parenting assessment.

### Proceedings Leading
### to Instant Appeals

On April 15, 2014, the juvenile court conducted a review and permanency hearing. The family's children and family services specialist testified. From his testimony, we glean several pertinent facts:

• The children had been in out-of-home placements for 13 months.
• Since the last review hearing, Melissa had two visits with two of her sons but she had not participated in visitation with her other children.
• During a team meeting the previous month, Melissa stated that she was not "doing what she was supposed to because she was mad."
• Melissa was not complying with family support services or random drug testing.
• The specialist was not aware of any employment on Melissa's part.
• Melissa had expressed interest in a residential treatment program for mothers with children, but there was no guarantee that she would be accepted into the program.

The specialist recommended that the permanency plan be changed to adoption for all of the children, with a concurrent goal of reunification with the father for the oldest three children and a concurrent goal of guardianship for the younger three children. The specialist based his recommendation partially on Melissa's lack of substantial progress with the case plan and also on Meidlinger's report.

The juvenile court also received Meidlinger's psychological screening report into evidence. The report made the following recommendation:

Any decisions made in regarding [sic] to case plan and disposition should be made with the understanding that Melissa has severe underlying characterological issues and is at high risk to return to previous problems in the future. Any decision to return custody of her children to her should be preceded by [an] extended period of time in which she demonstrate[s] stability in regard to work, relationships, finances and contact with her children.

Melissa testified regarding her compliance with the case plan. She claimed that she was consistent with her visitation from October 2013 to January 2014. Melissa explained that she did not participate in visits during the second half of January and the month of February, aside from two visits, because she "was very upset." She also claimed that for the 6 weeks prior to the review hearing, the only days that she did not see any of her children were Mondays and Fridays. According to Melissa's testimony, she had steady employment from September 2013 until January 16, 2014, when she traveled to Colorado to be with a son who was hospitalized there. That absence, she testified, caused the loss of her job. Melissa admitted that she was not capable of parenting all six children without help, stating "I can't even take care of myself right now, so how could I take care of anybody else?"

The juvenile court agreed that the permanency goals for the children should be changed as recommended by DHHS. The court orally stated that it adopted "[t]he balance of those recommendations not otherwise in conflict with those permanency goals." Counsel for the State inquired whether DHHS was required to continue to provide services to Melissa. The court responded, "Only as is required under [an April 9, 2014,] case plan that's identified on pages 28 through 32 that are — that is consistent with the permanency goals."

The pages of the case plan referred to by the juvenile court contained a number of goals and strategies. The case plan set forth the following goals for Melissa: (1) continue to work with a family support worker to improve her parenting

skills, (2) attend individual mental health counseling with an approved mental health provider, (3) take her prescribed medication and work with her physician with regard to medication management for her mental health needs, (4) have supervised parenting time with her children as arranged by DHHS, (5) participate in random drug screening, and (6) follow all of the strategies outlined in the case plan. The case plan listed the following strategies: (1) have monthly contact with the DHHS case manager, (2) participate in a parenting assessment and follow any recommendations, (3) participate in a substance abuse evaluation and follow any recommendations, (4) participate in individual mental health counseling, (5) participate in individual substance abuse counseling, (6) participle in a relapse prevention group as recommended in her substance abuse evaluation, (7) regularly attend an "AA/NA" program, (8) participate in family therapy with her children when it is recommended by the children's therapists, (9) secure a safe and stable home, and (10) maintain stable employment. The majority of these strategies are the same as those contained in the previous case plan.

## Juvenile Court's Disposition

In an April 15, 2014, order entered in each case, the juvenile court formally changed the permanency goal for the children. The court changed the primary permanency goal to adoption for all children, with a concurrent plan of reunification with the father for the three oldest children and a concurrent plan of guardianship for the three youngest children. The court found that reasonable efforts had been made to reach the primary goal of reunification, but that those efforts were not successful. The court adopted the provisions of the April 9 case plan and ordered all parties to comply with the case plan's terms, including any amendments ordered by the court.

Melissa timely appealed. The Nebraska Court of Appeals originally summarily dismissed the appeals, stating that the order entered in each case did not affect a substantial right. Melissa filed a motion for rehearing, which the Court of Appeals sustained. The Court of Appeals reserved the issue of jurisdiction and directed the parties to address the jurisdictional

issue in their briefs. We subsequently moved the cases to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENT OF ERROR

Melissa assigns that the juvenile court erred in finding that the State presented sufficient evidence to establish that the change in permanency objective was in the children's best interests.

## STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law.[2]

[2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[3] When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[4]

## ANALYSIS

### JURISDICTION

[3-5] We must first determine whether we have jurisdiction, which turns upon whether the orders changing the primary permanency objective affected a substantial right. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.[6] Juvenile court proceedings are

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *In re Interest of Mya C. & Sunday C.*, 286 Neb. 1008, 840 N.W.2d 493 (2013).

[3] *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

[4] *Id.*

[5] *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013).

[6] *Id.*

special proceedings under Neb. Rev. Stat. § 25-1902 (Reissue 2008), and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.[7] Thus, if changing the permanency objective affected Melissa's substantial right to raise her children, the orders were final and appealable. But if the change did not affect a substantial right, we lack jurisdiction and must dismiss the appeals.

[6-9] The governing principles are easily stated. A substantial right is an essential legal right, not a mere technical right.[8] Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.[9] A review order does not affect a parent's substantial right if the court adopts a case plan or permanency plan that is almost identical to the plan that the court adopted in a previous disposition or review order.[10] Thus, a dispositional order which merely continues a previous determination is not an appealable order.[11]

But because the inquiry is so fact specific, applying these principles can easily lead to different results from case to case. On at least two occasions, the Court of Appeals has considered the appealability of a juvenile court order changing the permanency goal from reunification to adoption. As those cases illustrate, the resolution is dependent on the facts. This makes it impractical to declare a uniform rule regarding the finality of an order changing the permanency goal.

In *In re Interest of Tayla R.*,[12] the Court of Appeals determined that an order in one of the consolidated appeals of the case which changed the permanency plan from reunification

---

[7] *In re Interest of Mya C. & Sunday C.*, *supra* note 2.

[8] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[9] *In re Interest of Danaisha W. et al.*, *supra* note 5.

[10] *In re Interest of Mya C. & Sunday C.*, *supra* note 2.

[11] *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999).

[12] *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009).

to adoption was not appealable because it did not affect the mother's substantial rights. The court observed that the terms of the new order had the effect of continuing reasonable efforts to preserve the family. The court reasoned that the new order contained the same services as the previous order, that it did not change the mother's visitation or status, and that it implicitly provided the mother an opportunity for reunification by complying with the terms of the rehabilitation plan.[13]

A different panel found an order modifying a permanency goal from reunification to guardianship/adoption to be appealable in *In re Interest of Diana M. et al.*[14] In that case, the order modifying the permanency plan objective was coupled with an order ceasing further reasonable efforts to bring about reunification.[15] The court reasoned that because the order affected the mother's right to reunification with her children, it affected a substantial right and was appealable.[16]

In both of those cases, the Court of Appeals' jurisdictional analysis was consistent with our precedent. In *In re Interest of Sarah K.*,[17] we scrutinized orders entered 2 months apart. The first order approved a case plan which identified reunification as the goal and provided for long-term foster care for the child and supervised visitation by the parents. The second order adopted the State's permanency plan of long-term foster care transitioning to independent living which provided for the possibility of reunification. On appeal, we stated that the terms of the second order "merely repeat the essential terms" of the first order and that "[t]he parents were not disadvantaged by the juvenile court's [second] order . . . , nor were their substantial rights changed or affected thereby."[18] We further stated that the second order "effects no

---

[13] *Id.*

[14] *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013).

[15] *Id.*

[16] See *id.*

[17] *In re Interest of Sarah K., supra* note 11.

[18] *Id.* at 58, 601 N.W.2d at 785.

change in the parents' status or the plan to which the parents and [child] were previously subject."[19] Thus, we concluded that the second order was not an appealable order. Similarly, in *In re Guardianship of Rebecca B. et al.*,[20] we dismissed one of the consolidated appeals after concluding that a later order merely continued the terms of the previous dispositional order and, thus, did not affect a substantial right of the mother.

In the instant case, the thrust and parry of arguments ultimately favor Melissa. The State contends that the April 2014 orders did not affect a substantial right because Melissa was still provided with an opportunity to comply with the case plan adopted by the juvenile court. But Melissa points out that the court's change of the permanency objective to adoption was accompanied by an order relieving DHHS of any obligation to provide her with services. In response, the State suggests that although DHHS was no longer required to pay for services not related to the new permanency objective, Melissa could still complete the case plan and move toward reunification. We agree with Melissa.

The juvenile court's April 2014 order entered in each case was not merely a continuation of previous orders. Although it contained many of the same goals and strategies, it changed the permanency objective to adoption for all children and did not provide for reunification with Melissa as a concurrent goal. Because the order contained many of the same goals and strategies, the order would suggest that the situation here resembles that presented in *In re Interest of Tayla R.*[21] But the juvenile court's statements from the bench essentially eviscerated the opportunity to achieve reunification. The court stated that DHHS was required to continue to provide services to Melissa only as consistent with the new permanency goals. Because reunification with Melissa was no longer a goal, it appears that

---

[19] *Id.* at 59, 601 N.W.2d at 785.

[20] *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

[21] *In re Interest of Tayla R.*, *supra* note 12.

services aimed at reunification were effectively ended. Thus, Melissa was disadvantaged by the orders.

[10] An order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights; such an order affects a parent's substantial right in a special proceeding and is appealable.[22] We conclude that the order entered in each case affects Melissa's substantial right and is a final, appealable order.

This case illustrates the importance of ensuring that the record shows the full import of a court's ruling. The written orders entered in each case stated only that the juvenile court adopted DHHS' case plan and that the parties were to comply with its terms, including any court-ordered amendments. The orders did not reflect the court's statement from the bench relieving DHHS from providing services to Melissa that were inconsistent with the new permanency goals. Here, we are aware of the real effect of the court's ruling through a question from DHHS' counsel and the court's response, which were contained in the bill of exceptions. Had this colloquy not been included in the record, our conclusion regarding appealability would likely have been different.

## Best Interests

Melissa argues that the State presented insufficient evidence to prove that changing the permanency objective was in the children's best interests. We disagree.

[11-13] The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. The goal of juvenile proceedings is not to punish parents, but to protect children and promote their best interests.[23] Once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. Juvenile courts are

---

[22] See *In re Interest of Mya C. & Sunday C., supra* note 2.

[23] *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.[24] The State has the burden of proving that a case plan is in the child's best interests.[25]

The evidence demonstrated that Melissa has not made sufficient progress toward the goal of reunification. The specialist testified that Melissa's progress began when he took over the family's case in March 2014, stating "she wasn't doing anything she was supposed to be doing until I showed up this last month or the month of March until now." And although Melissa had arranged mental health counseling, she had already missed three appointments. For a period of time, Melissa did not participate in visitations with her children because she was upset.

Melissa admitted during the April 2014 hearing that she was not capable of parenting her children on her own at that time. She had never been able to provide financially for herself and her children. And Melissa's mother had done most of the parenting of the children for the past 7 or 8 years. Further, Meidlinger's report recommended that "[a]ny decision to return custody of [Melissa's] children to her should be preceded by [an] extended period of time in which she demonstrate[s] stability in regard to work, relationships, finances and contact with her children."

[14] Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.[26] At the time of the April 2014 hearing, the children had been in out-of-home placements for 13 months. The evidence established that Melissa had made little progress toward reunification with her children, and an expert recommended that there be an extended period of time of stability in Melissa's life before custody of the children be returned to her. Given this evidence, it was in the children's best interests to change the primary permanency objective from reunification with Melissa.

---

[24] *In re Interest of Karlie D.*, *supra* note 8.

[25] *In re Interest of Diana M. et al.*, *supra* note 14.

[26] *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008).

## CONCLUSION

Because the juvenile court's orders affected Melissa's substantial right to raise her children, they were final and appealable. Upon our de novo review, we find that the evidence supports the juvenile court's order changing the primary permanency objective from reunification with Melissa to adoption, with a concurrent plan of reunification with the father for the three oldest children and a concurrent plan of guardianship for the three youngest children. We therefore affirm the juvenile court's order in each case.

Affirmed.

———————

State of Nebraska, appellee, v.
Donald M. Lee, appellant.
___ N.W.2d ___

Filed April 3, 2015.    No. S-14-537.

1. **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.
2. **Postconviction: Pleas: Waiver: Effectiveness of Counsel.** Normally, a voluntary guilty plea waives all defenses to a criminal charge. However, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.
3. **Evidence: Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.

Appeal from the District Court for Lincoln County: Donald E. Rowlands, Judge. Affirmed.

Donald M. Lee, pro se.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.