IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
(Memorandum Web Opinion)

IN RE INTEREST OF CRISTALYLA C. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CRISTALYLA C. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

v.

MELISSA M., APPELLANT, AND IZRAEL C., APPELLEE AND CROSS APPELLANT.

Filed August 30, 2016.    Nos. A-15-1170 through A-15-1172.

Appeal from the County Court for Scotts Bluff County: KRISTEN D. MICKEY, Judge. Affirmed.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Kelli L. Ceraolo, Deputy Scotts Bluff County Attorney, for appellee State of Nebraska.

Rhonda R. Flower, of Law Office of Rhonda R. Flower, for appellee Izrael C.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Melissa M. appeals and Izrael C. cross-appeals from an order of the Scotts Bluff County Court, sitting in its capacity as a juvenile court. The county court's order terminated Melissa's parental rights to three of her children: Cristalyla C., Nathaniel M., and Angel M. The order also terminated Izrael's parental rights to the daughter he shares with Melissa, Cristalyla. In their appeals, Melissa and Izrael challenge the county court's finding that there was sufficient evidence presented to prove the relevant statutory grounds for termination of their parental rights and to prove that termination of their parental rights is in the children's best interests.

- 1 -

Upon our de novo review of the record, we find that sufficient evidence was presented to warrant the termination of Melissa's parental rights to Cristalyla, Nathaniel, and Angel and to warrant the termination of Izrael's parental rights to Cristalyla. As such, we affirm the order of the county court.

## II. BACKGROUND

### 1. PARTIES

Melissa's appeal focuses on her relationship with her three youngest children, Cristalyla, born in December 2007; Nathaniel, born in July 2009; and Angel, born in February 2011. The juvenile court proceedings below also initially involved Melissa's older children. However, those children were subsequently placed in the custody of their biological father and, as a result, they were dismissed from the juvenile court proceedings and are not a subject of this appeal.

Izrael's cross-appeal focuses only on his relationship with Cristalyla, who is Izrael's daughter with Melissa. We note that the biological father of Nathaniel and Angel is not a party to this appeal.

### 2. PROCEDURAL HISTORY

#### (a) Melissa

In March 2013, Melissa was incarcerated for a shoplifting conviction and her six youngest children were residing with her mother. While the children were under their grandmother's care, the Department of Health and Human Services (the Department) received multiple reports that the children were not being properly cared for or supervised. As a result of the Department's investigation into these reports, the children were removed from their grandmother's care and placed in foster homes. In addition, on March 4, 2013, the State filed petitions alleging that Cristalyla, Nathaniel, and Angel were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014) due to the faults or habits of Melissa.

Shortly after the State filed the petitions, Melissa was released from jail. Subsequently, on May 23, 2013, the State filed second amended petitions which alleged that Cristalyla, Nathaniel, and Angel were children within the meaning of § 43-247(3)(a) through no fault of Melissa. Essentially, the amended petitions alleged that the children had been left in the care of their grandmother who was "unable to meet [their needs] and [who] has been overwhelmed by the behaviors of the [children]." Melissa admitted to the allegations in the second amended petitions and the children were adjudicated to be within the meaning of § 43-247(3)(a).

Less than one month after Melissa admitted to the allegations in the amended petitions, she returned to jail for additional shoplifting charges. She remained in jail until October 2013. When Melissa was released from jail, she was described as being noncompliant and inconsistent in working with the Department to obtain reunification with her children. Melissa was apparently using Methamphetamines during this time period and was only sporadically visiting with the children. In fact, in March 2014, Melissa stopped visiting with the children for a period of time because she was upset that their foster care placements were changed.

In April 2014, a review hearing was held. At this hearing, the county court decided to change the permanency goal for the children from reunification with Melissa to adoption. Melissa

appealed the court's decision. Ultimately, in April 2015, the Nebraska Supreme Court affirmed the county court's decision to change the permanency goal. See *In re Interest of Octavio B., et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). Immediately after Melissa learned of the decision of the Supreme Court, she filed a motion in the county court to change the permanency objective back to reunification. This motion was denied.

While Melissa's appeal was pending, Melissa was arrested and convicted of carrying a concealed weapon. As a result of her conviction, she was incarcerated from January 2015 through March 2015.

On May 29, 2015, the State filed motions to terminate Melissa's parental rights to Cristalyla, Nathaniel, and Angel. The State sought termination under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Cum. Supp. 2014). The State also alleged that termination of Melissa's parental rights was in the best interests of the children.

### (b) Izrael

Izrael was immediately made aware of Cristalyla's removal and placement in a foster home. In fact, in May 2013, he spoke with the Department caseworker assigned to Cristalyla's case. Izrael told the caseworker that he wanted to be involved in Cristalyla's life, but he had "a lot going on."

Izrael was incarcerated shortly after Cristalyla was adjudicated as to Melissa in May 2013. In June 2013, Izrael began a period of incarceration in a federal prison in Colorado. He remained incarcerated until August 2014.

In August 2013, while Izrael remained incarcerated, the State filed a supplemental petition alleging that Cristalyla was within the meaning of § 43-247(3)(a) due to Izrael's history of substance abuse and failure to maintain regular and consistent contact with Cristalyla. In January 2014, Cristalyla was adjudicated to be a child within the meaning of § 43-247(3)(a) due to the faults or habits of Izrael.

Upon Izrael's release from prison in August 2014, he resided in a half-way house in Hastings, Nebraska. In October 2014, he participated in a parenting evaluation. However, shortly after completing the evaluation, Izrael moved to Colorado and has remained there throughout the duration of the proceedings. He did not have any further contact with Cristalyla, nor did he engage in any further services recommended by the Department.

On May 12, 2015, the State filed a motion to terminate Izrael's parental rights to Cristalyla. The State sought termination under Neb. Rev. Stat. § 43-292(2), (3), (6), and (7) (Cum. Supp. 2014). The State also alleged that termination of Izrael's parental rights was in the best interests of Cristalyla.

A hearing on the State's motions to terminate Melissa's and Izrael's parental rights was held on various dates in August and September 2015.

### 3. EVIDENCE PRESENTED AT TERMINATION HEARING

### (a) Melissa

At the termination hearing, the State presented evidence which demonstrated that for a majority of time this case was pending in the county court, Melissa made little to no progress towards reunification with her children.

At the time this case was initiated in March 2013, Melissa was incarcerated on a shoplifting charge. She was released shortly after the case began, but returned to jail in June 2013 for an additional shoplifting charge. Melissa remained in jail from June 2013 through October 2013. In January 2015, almost two years after the case was initiated, Melissa was arrested and jailed again after she engaged in a high speed chase with police to avoid a traffic stop. When Melissa was finally stopped by police, a pocketknife was found in her purse and miscellaneous pills were found in her possession. Melissa remained in jail until the end of March 2015.

During the first two years the case was pending, Melissa frequently refused to participate in random drug testing. And, when she did comply with drug testing, some tests revealed she had been using Methamphetamines. In fact, Melissa admitted that she used Methamphetamines as recently as January 2015.

In addition, during this time period, Melissa was frequently unemployed. Melissa was employed immediately after her release from jail in October 2013, but she lost her job by January 2014 and lied about this fact to Department workers. Melissa did not obtain any further stable employment until April 2015, more than two years after this case began. Melissa also did not obtain independent, stable housing until after the start of the termination hearing. Prior to this time, when she was not in jail, she resided with her mother.

During the first two years the case was pending, Melissa's attendance at visitation was described as "sporadic." And, when she did attend the supervised visits, visitation workers had concerns that Melissa's mother was doing a majority of the parenting. Melissa did not participate with her family support worker to try and improve her parenting skills. By the time of the termination hearing, Melissa was only permitted to see the children for one hour every other week. And, Cristalyla and Nathaniel stopped attending these visits at the recommendation of their therapist.

The State presented the testimony of Cristalyla's and Nathaniel's therapist. She testified that both children need a stable home, which she did not think Melissa could provide. In addition, the therapist testified that both Cristalyla and Nathaniel engage in negative behaviors after spending time with Melissa. Such behaviors stop when they do not see Melissa for an extended period of time. She testified that when the children see Melissa during visitations, it triggers their feelings of sadness, hurt, and abandonment and they take their anger with Melissa out on other people. The therapist did not believe that reunification with Melissa was in either child's best interests. The therapist reported that Cristalyla has specifically stated that she does not want to live with Melissa again because she does not trust Melissa.

The State also presented evidence of the results of a psychological and parenting assessment completed by Melissa. This assessment revealed that Melissa lacks important parenting skills. She suffers from a personality disorder and may not be capable of putting her children's needs ahead of her own needs or even being able to understand the children's needs. Another symptom of Melissa's personality disorder is a pattern of making progress in her life, but being unable to sustain that progress for long periods of time.

Contrary to the State's case, Melissa focused her presentation of evidence on the five months prior to the termination hearing.

In April 2015, Melissa obtained employment at a local dry cleaning business. She continued to work there through the time of the termination hearing and, had even obtained an

increase in salary during that time. Just prior to the end of the termination hearing, Melissa began renting a home. She testified that she was working on moving into the home and preparing it for the children.

Melissa testified that since her release from jail in March 2015, she had been regularly and consistently seeing a substance abuse counselor and participating in substance abuse groups, including Narcotics Anonymous and a relapse prevention group. Melissa also began actively participating with her family support worker and completed a parenting class.

Melissa presented evidence that she was very consistent in attending visitation with the children, when that opportunity was provided to her. And, she presented evidence to demonstrate that her interactions with the children had improved over time.

### (b) Izrael

At the termination hearing, the State presented evidence that Izrael has not had a great deal of contact with Cristalyla over the course of her life. Cristalyla's grandmother testified that Izrael visited Cristalyla "a couple of times" prior to her removal and sometimes called her on the telephone. Melissa confirmed this testimony and also testified that Izrael was "incarcerated a big percentage of [Cristalyla's] life up until the time she was taken."

Izrael's contact with Cristalyla during these proceedings was also limited. He was incarcerated for over a year after the proceedings were first initiated. Upon his release, Izrael saw Cristalyla briefly during a parenting assessment; however, after completing this assessment, Izrael moved to Colorado and had no further contact with his daughter.

The results of the parenting assessment completed by Izrael revealed that Izrael and Cristalyla did not have a strong relationship and also revealed that Izrael had a lack of empathy towards Cristalyla.

Izrael did not offer any evidence at the termination hearing.

### 4. JUVENILE COURT ORDER

After the termination hearing, the county court entered a detailed order terminating Melissa's parental rights to Cristalyla, Nathaniel, and Angel and terminating Izrael's parental rights to Cristalyla.

The court found that grounds for termination of Melissa's parental rights existed under § 43-292(2), (4), (6), and (7). The court also found that termination of Melissa's parental rights is in the children's best interests. The court stated, "[T]he overall pattern of conduct shown by clear and convincing evidence is a continued failure to put the needs of the children above her own, and the absence of consistent sustained progress to become an appropriate parent."

The court found that grounds for termination of Izrael's parental rights existed under § 43-292(2), (3), (6), and (7). The court also found that termination of Izrael's parental rights is in Cristalyla's best interests. The court stated, "[T]he facts are that the child has never resided with [Izrael]. His lengthy incarceration coupled with his extraordinarily limited contact with the child demonstrates a failure to place himself in a position to become an appropriate parent."

### III. ASSIGNMENTS OF ERROR

On appeal, Melissa assigns as error the county court's finding that termination of her parental rights is warranted pursuant to § 43-292(2), (4), (6), and (7), and its finding that termination of her parental rights is in the children's best interests.

On cross-appeal, Izrael assigns as error the county court's finding that termination of his parental rights is warranted pursuant to § 43-292(2) and (6), and its finding that termination of his parental rights is in Cristalyla's best interests.

### IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

### V. ANALYSIS

#### 1. MELISSA'S APPEAL

In her appeal, Melissa challenges both the county court's finding that there was sufficient evidence presented to prove the relevant statutory grounds for termination of her parental rights and its finding that termination of her parental rights is in the children's best interests. We first address Melissa's assertions regarding the county court's findings about the statutory factors warranting the termination of her parental rights.

#### (a) Statutory Factors

The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Melissa's parental rights to Cristalyla, Nathaniel, and Angel, the county court found that the State had presented clear and convincing evidence to satisfy § 43-292(2), (4), (6), and (7), which provide in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile;

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination; [and]

. . . .

(7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

In her brief on appeal, Melissa asserts that the county court erred in finding that termination of her parental rights was warranted pursuant to § 43-292(2), (4), (6), and (7). Contrary to Melissa's assertions, upon our de novo review of the record we find that the State presented clear and convincing evidence to prove that termination of her parental rights is warranted pursuant to § 43-292(2). The evidence presented at the termination hearing revealed that Melissa has consistently and repeatedly failed to provide Cristalyla, Nathaniel, and Angel with proper parental care or protection.

Melissa's children were placed into the Department's custody in March 2013 because Melissa was incarcerated and her mother, the children's designated caregiver, was unable to provide adequate care or supervision to the children. Once Melissa was released from jail for an extended period of time, in October 2013, she failed to demonstrate to the county court or to the Department that she was capable of regaining custody of her children.

The Nebraska Supreme Court has held that a parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *In re Interest of Joseph S.*, 291 Neb. 953, 870 N.W.2d 141 (2015). The evidence presented in this case revealed that for at least the first two years this case was pending and the children were in out-of-home placements, Melissa failed to provide an environment to which the children could return. Melissa was in and out of jail. She was using drugs. She did not have steady employment or independent housing. She was not cooperating with the services offered to her by the Department, including obtaining any mental health or substance abuse treatment. Essentially, Melissa did not make any significant changes to her lifestyle which would have improved her parenting abilities and made her a more appropriate caregiver. Perhaps the best evidence of Melissa's failure to make any changes to her life is her arrest in January 2015. By the time of this arrest, her children had been out of her home for almost two years. Presumably, by this point, Melissa understood the importance of cooperating with the Department to obtain reunification with her children. But, Melissa chose to engage police in a high speed chase and was arrested after police found a concealed weapon and pills in her possession. In addition, Melissa has admitted that at this time she was still using methamphetamines.

The Department workers who were assigned to the family during the first two years of the proceedings testified that Melissa made little to no progress towards reunification with the children during this time. The results of Melissa's psychological and parenting assessment revealed that Melissa may not ever be capable of providing the children with a stable and permanent home environment. As a result of her personality disorder, she struggles to put the needs of her children ahead of her own needs.

In addition, the evidence presented at the termination hearing revealed that Melissa has a history of failing to provide her children with proper care and protection. In 2007, Melissa agreed to work with the Department on a voluntary basis. This case appears to have been initiated as a result of domestic abuse occurring in Melissa's home. And, in 2009, Melissa participated in an active case with the Department which resulted from her drug use. Melissa completed a drug treatment program and the children were returned to her care in January 2010. Three years later, in March 2013, Melissa was again using drugs, was in jail, and her children were removed from her care.

Given Melissa's failure to make any genuine effort toward reunification with the children for a majority of these proceedings and given her history of involvement with the Department and the juvenile court, we find clear and convincing evidence that termination of Melissa's parental rights is warranted pursuant to § 43-292(2). Melissa has consistently and repeatedly failed to provide Cristalyla, Nathaniel, and Angel with proper parental care or protection.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, this court need not review termination under § 43-292(4), (6), or (7).

Once a statutory basis for termination has been proved, the next inquiry is whether termination of parental rights is in the children's best interests.

(b) Best Interests

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

While Melissa urges us to focus on the progress she made in the few months prior to the termination hearing, we are unable to ignore Melissa's actions, or inactions, for the first two years the case was pending and her children were struggling in out-of-home placements. Nor can we ignore the pattern of progress and regression present in Melissa's history.

As we discussed more fully above, for the first two years this case was pending in the county court, Melissa failed to make any significant changes to her lifestyle which would have made her a more appropriate caregiver for her children. She did not cooperate with the services the Department offered to her and she continued to use drugs and engage in criminal behavior. While we recognize that after Melissa was released from jail in March 2015, she began to make some positive changes in her life, we also recognize that such changes are simply "too little too

late." This court has previously stated, "Last minute attempts by parents to comply with the rehabilitation plan do not prevent termination of parental rights." *In re Interest of Tabitha J.*, 5 Neb. App. 609, 619-20, 561 N.W.2d 252, 260 (1997). Here, Melissa did not make any real efforts toward achieving reunification with her children until the children had already been in an out-of-home placement for more than two years. The Department offered her numerous chances to obtain reunification, but Melissa failed to take advantage of any of the opportunities provided to her. Instead, it appears that Melissa waited to demonstrate any sort of compliance until she knew that the filing of a motion to terminate her parental rights was imminent.

Moreover, the evidence presented at the termination hearing revealed that Melissa has made positive changes in her life before, only to regress a few months later. There was evidence that Melissa had made some progress at various points during the pendency of these proceedings, but that she was unable to maintain that progress for a long period of time. And, perhaps more significant than Melissa's failure to maintain progress during these proceedings is Melissa's history with the Department and the juvenile court. Melissa has been involved with the Department on at least three separate occasions, but such involvement has not produced any long-term changes. We have previously stated that one's history as a parent speaks to one's future as a parent. See *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

The results of Melissa's psychological and parenting assessment revealed that Melissa may not be capable of making long-term changes to her life that would result in her becoming a more appropriate parent to her children. These results indicated that a pattern of progress and regression is consistent with the personality disorder which Melissa suffers from. In addition, this personality disorder creates a high risk that Melissa will struggle with a relapse of drug use, with understanding and empathizing with her children, and with forming strong bonds with her children.

At the time of the termination hearing, there was evidence which indicated that Melissa currently does not have much of a relationship with Cristalyla, Nathaniel, or Angel. And, that what relationship she does have with Cristalyla and Nathaniel is detrimental to them. Both children struggle with significant behavioral problems whenever they have contact with Melissa. When they do not see Melissa for long periods of time, these behavioral problems are almost nonexistent. While Angel apparently does not struggle with behavioral problems after visiting with Melissa, he was barely two years old when he was removed from Melissa's home. He has been in an out-of-home placement for well over two years. He only sees Melissa every other week for one hour. Accordingly, the strength of his bond with Melissa is in doubt.

Cristalyla, Nathaniel, and Angel need, and deserve permanence. Based on the evidence presented at the termination hearing, we conclude that Melissa is not capable of providing such permanence. Melissa is simply not capable of independently parenting her children and it appears unlikely that she will gain the capability to independently parent them in the near future.

Given all of the evidence presented at the termination hearing, we conclude that the State clearly and convincingly demonstrated that termination of Melissa's parental rights is in the children's best interests. Melissa is currently not a fit parent, in that she has proven herself incapable of providing the children with permanence, safety, or support. We, therefore, affirm the decision of the county court to terminate Melissa's parental rights to Cristalyla, Nathaniel, and Angel.

## 2. IZRAEL'S CROSS-APPEAL

### (a) Statutory Factors

In the county court's order, it found that termination of Izrael's parental rights to Cristalyla was warranted pursuant to § 43-292(2), (3), (6), and (7). However, on appeal, Izrael assigns as error only the county court's finding that termination of his parental rights was warranted pursuant to § 43-292(2) and (6). He does not challenge the court's finding as to § 43-292(3) and (7). As we explained above, an appellate court need only find that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292. See *In re Interest of Justin H. et al.*, *supra*. Given that Izrael does not challenge the county court's findings that termination of his parental rights was warranted pursuant to § 43-292(3) or (7) and given the uncontradicted evidence that Cristalyla has been in an out of home placement for at least 15 of the last 22 months, pursuant to § 43-292(7), we need not address Izrael's specific assertions concerning § 43-292(2) or (6).

Cristalyla was removed from Melissa's home in March 2013. Since that time, she has resided in multiple out-of-home placements and has not returned to the home of either Melissa or Izrael. Accordingly, at the time the State filed its motion to terminate Izrael's parental rights to Cristalyla in May 2015, she had been in an out-of-home placement for approximately 26 months. And, at the time the termination hearing began on August 25, Cristalyla had been in an out-of-home placement for 29 months, or almost two and one-half years. Due to the significant length of time that Cristalyla has been in an out-of-home placement, it is clear that grounds for termination of Izrael's parental rights under § 43-292(7) were proved by sufficient evidence.

### (b) Best Interests

In his brief on appeal, Izrael assigns as error the county court's finding that termination of his parental rights is in Cristalyla's best interests. However, Izrael failed to discuss this assignment of error in his brief. An appellate court will not consider assignments of error which are not discussed in the brief. *In re Interest of Rachael M.*, 258 Neb. 250, 603 N.W.2d 10 (1999). Because Izrael has not discussed this assignment of error in his brief, we will not consider it other than to briefly note that there was clear and convincing evidence to support the order of termination.

Izrael has had very minimal contact with Cristalyla during the pendency of the juvenile court proceedings and during her entire life. He has been in and out of prison throughout Cristalyla's life and has proven himself unable to provide her with any parental care, support, or permanency. Izrael has simply failed to demonstrate that he is willing or able to be a parent to Cristalyla. And, given the length of time Cristalyla has been in an out-of-home placement, it is clear that she desperately needs permanency and stability, things which Izrael cannot provide to her.

## VI. CONCLUSION

Upon our de novo review of the record, we find that there was sufficient evidence presented at the termination hearing to warrant the termination of Melissa's parental rights to Cristalyla, Nathaniel, and Angel, and to warrant the termination of Izrael's parental rights to Cristalyla. As such, we affirm the order of the county court terminating Melissa's and Izrael's parental rights.

AFFIRMED.