IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF DA'NIYA C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF DA'NIYA C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

YOLANDA N., APPELLANT.

Filed February 7, 2023.    No. A-22-500.

Appeal from the Separate Juvenile Court of Douglas County: MARY M.Z. STEVENS, Judge. Affirmed.

Nicole L. Cavanaugh for appellant.

Shinelle Pattavina, Deputy Douglas County Attorney, and Nikolaos Piperis, Senior Certified Law Student, for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Yolanda N. appeals from an order of the separate juvenile court of Douglas County, terminating her parental rights to her daughter, Da'Niya C. Upon our de novo review of the record, we affirm the juvenile court's order.

STATEMENT OF FACTS

Yolanda is the biological mother of Da'Niya, born in January 2018. The juvenile court terminated the parental rights of Da'Niya's biological father during these same juvenile proceedings. Because the father is not a part of this appeal, he will not be discussed further.

- 1 -

Da'Niya was removed from the home on June 26, 2020, due to concerns regarding Yolanda's drug use and domestic violence. A petition was filed the same day to adjudicate Da'Niya pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based on Yolanda's drug and alcohol use; participating in domestic violence with a romantic partner in the presence on Da'Niya; leaving Da'Niya with an inappropriate caregiver; and generally failing to provide for Da'Niya's care and safety; all of which placed Da'Niya at risk of harm. Da'Niya was adjudicated in June 2020. Pursuant to a plea agreement, Yolanda admitted to participating in domestic violence in Da'Niya's presence and placing her at risk of harm, and all other portions of the petition were dismissed by the State. Da'Niya has remained out of the home since she was removed.

The juvenile court entered a dispositional plan on September 24, 2020, which required that Yolanda obtain and maintain stable housing and a legal source of income, complete an initial diagnostic interview (IDI) and follow all recommendations, participate in individual therapy, and participate in domestic violence education and a support group. Four review hearings were held in this case; occurring on December 8; May 12, 2021; October 26, 2021; and March 24, 2022. The goals of the court-ordered dispositional plan have been consistent throughout the case.

On February 9, 2022, the State filed a motion for termination of Yolanda's rights in regard to Da'Niya, alleging that statutory grounds to terminate existed pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), and alleging that termination was in the best interests of Da'Niya.

The termination trial was held on June 3, 2022. A summary of the evidence relevant to Yolanda follows.

Jacey Stephens was the only Nebraska Department of Health and Human Services (the Department) caseworker assigned to the family's case. She testified that the Department received several intakes related to the family between May and June of 2020. The first intake detailed a domestic violence incident between Yolanda and her partner where Da'Niya was present. Police later arrived on the scene but were unable to locate Yolanda and Da'Niya. Later intakes reported concerns that Yolanda's home was unsanitary, Yolanda was using heroin and methamphetamines, and witnesses had observed Yolanda striking Da'Niya in the face.

From July 2020 to May 2021, Da'Niya was placed with Yolanda's sister, Jamie N. Jamie reported to Stephens that she had not seen Yolanda during the period she was caring for Da'Niya. However, Yolanda did maintain contact with Jamie and Da'Niya through video visits and phone calls.

Da'Niya was moved from Jamie's home because there were some "discrepancies" in the home study completed by the agency licensing Jamie's home. The agency indicated that Jamie's partner did not pass the background check due to pending criminal charges. Da'Niya was never placed back in Jamie's home.

Stephens testified that she had been contacted by members of Da'Niya's biological family in California and that she would complete other measures should the family be willing to work with the Department and should they be appropriate for placement. Stephens noted that locating Da'Niya's biological family is "something that we can always consider."

Da'Niya's foster mother since May 2021 testified that Yolanda has never reached out to her. Yolanda has not provided gifts for Da'Niya or made inquiries about Da'Niya's educational or

medical needs. However, the foster mother conceded that she had never provided Yolanda with her contact information.

Communication with Yolanda was a barrier throughout the case. Stephens testified that she provided Yolanda with her contact information during their first meeting in August 2020. However, Yolanda frequently changed her phone number to different internet-based numbers, and Stephens described a pattern of Yolanda reaching out after months of no contact to provide a new phone number. Stephens attempted to contact Yolanda in various ways including drop-in visits at known addresses, sending emails, text-messaging phone numbers that have been associated with Yolanda, and searching the Department's database to determine whether Yolanda had provided a phone number while applying for additional services. Despite these efforts, Stephens typically spoke to Yolanda once every 3 or 4 months, and she estimated that she has been unable to contact Yolanda for 9 to 12 months of the case. When Stephens did speak with Yolanda on the phone, they discussed the requirements of Yolanda's dispositional plan and Yolanda would request assistance in accessing services. Yolanda participated in just one of the monthly team meetings in April 2021.

Stephens attributed Yolanda's lack of consistent contact to her homelessness. Yolanda has offered Stephens a variety of reasons as to why she is unable to stay in touch, such as that Yolanda has no cell phone service, her phone is broken, or that she does not have access to a phone. Additionally, Yolanda has stated that because she only uses internet-based phone numbers, it is difficult for her to keep in contact with case professionals and service providers. Stephens was not aware of Yolanda's current address because Yolanda "couch surfs," stays with friends, or stays with her mother.

The dispositional plan permitted Yolanda to have supervised parenting time with Da'Niya in a neutral location. Since July 2020, Yolanda has had only five sessions of parenting time and has not seen her daughter since October 2021. Stephens sent out many referrals for agencies to provide transportation for Da'Niya and supervise visits with Yolanda. However, the referrals would be discharged because the agencies were unable to get in touch with Yolanda. As a result, Stephens herself transported Yolanda and supervised four parenting time visits. While Stephens observed no safety concerns, she did discuss with Yolanda her lack of consistent visitation with her daughter. Stephens also received reports from Da'Niya's foster mother that Da'Niya was struggling with feelings of abandonment and emotional distress.

Zarrieya Hollins was the visitation worker assigned to Yolanda's case from June 2021 to September. The only time Hollins and Yolanda spoke on the phone was to arrange a visit with Da'Niya. However, Yolanda did not show up for the visit. Hollins attempted to contacted Yolanda three times to conduct the visit, but after no response from Yolanda, Hollins discharged her from the agency. Yolanda called Hollins a few months after she was discharged to arrange a visit. Hollins informed Yolanda that she was no longer receiving services because she was not engaging and instructed Yolanda to contact her caseworker.

Unikka Shanklin was the visitation worker assigned to Yolanda's case for October 2021. Shanklin provided only one visit despite being scheduled to provide three visits a week for Da'Niya and Yolanda. The day after Yolanda's first visit had occurred, Yolanda canceled the visit scheduled for that afternoon while Da'Niya was already in Shanklin's car. When Da'Niya was told that no visit would be happening, she became upset and began to cry. Shanklin did not have further contact with Yolanda until she text-messaged Shanklin in April of 2022 to say that she wanted to

see her child. Shanklin texted back that she did not believe Yolanda's case was with her agency, as she was discharged due to noncompliance.

Turning to the court-ordered services of Yolanda's dispositional plan, Stephens noted that she discussed scheduling an IDI with Yolanda. Yolanda responded that she was aware of how to access services through a particular provider and that she would be able to set up the IDI herself. After several months of disengagement, Yolanda called Stephens to provide her with a new phone number. Stephens asked Yolanda if she had completed the IDI and Yolanda stated that she had forgotten and would have to reschedule it. Stephens was unaware if Yolanda ever rescheduled the IDI. This concerned Stephens as Yolanda previously disclosed diagnoses of fetal alcohol syndrome and adjustment disorder, and without an IDI, Yolanda had not demonstrated that she has the mental stability to provide the proper care for Da'Niya.

Yolanda likewise did not participate in individual therapy, which Stephens found odd as Yolanda had specifically requested the service to help her address past traumas.

Yolanda self-reported to Stephens that she had experienced domestic violence in several relationships and was therefore ordered to participate in domestic violence education and a support group. While Stephens provided Yolanda with a written list of domestic violence resources, she conceded that she did not make referrals to specific agencies for Yolanda. When Stephens asked Yolanda about her progress in accessing the offered resources, Yolanda would respond that she would get around to it. Stephens does not believe that Yolanda ever participated in either domestic violence education or a support group. Stephens found this concerning because domestic violence was one of the reasons Da'Niya was brought into the child welfare system. Stephens was unsure if Yolanda had been able to obtain the skills or develop the capacities to protect her child if she was placed in a harmful situation, such as domestic violence.

In an effort to find housing, Yolanda reported to Stephens that she had applied for a housing program through the Douglas County Housing Authority. Yolanda was incarcerated from March 2022 to May for possession of a controlled substance and Stephens "knew" that Yolanda would no longer be eligible for the housing program. However, Stephens did not confirm Yolanda's disqualification with the Housing Authority. Stephens also stated that she would have provided Yolanda a list of potential housing with rental assistance "if requested." Because Yolanda did not respond to Stephens' offer of a housing resources list, Stephens did not provide it to her.

To help Yolanda schedule the above court-ordered services, Stephens arranged for Yolanda to have a family support worker. However, Yolanda was twice discharged from family support for lack of engagement. Again, Yolanda explained that it was difficult to keep in contact with case professionals on a consistent basis because she did not have stable housing or access to a phone.

Stephens conceded that due to Yolanda's self-disclosed diagnoses, she may have qualified for disability benefits. Stephens tasked the family support worker with discussing Yolanda's eligibility for various benefit programs. However, the discussion never occurred because Yolanda failed to attend scheduled meetings with her worker.

Stephens concluded that Yolanda had not engaged with any services in order to show the Department that she could provide the proper parental care, supervision, and protection of her child, or provide for any of the child's basic or emotional needs.

On June 6, 2022, the juvenile court entered an order terminating Yolanda's rights to Da'Niya. The court found that the State had met its burden of proving substantial and continuous

neglect, and that Da'Niya had been in out-of-home placement for 15 or more months out of the most recent 22 months, pursuant to § 43-292(2) and (7). The court also found that pursuant to § 43-292(6), Yolanda also failed to correct the conditions that led to her child being adjudicated under § 43-247(3)(a). The court further found that Yolanda was an unfit parent and that it was in the best interests of Da'Niya to have Yolanda's parental rights terminated.

Yolanda appeals.

## ASSIGNMENT OF ERROR

Yolanda assigns that the juvenile court erred in finding that termination of her parental rights was in Da'Niya's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

## ANALYSIS

*Statutory Grounds for Termination.*

Yolanda does not assign that the juvenile court erred in finding that statutory grounds existed to terminate her parental rights. However, for the sake of completeness, we first address whether statutory grounds exist.

The juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2), (6), and (7).

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *Id*.

Here, Da'Niya has been in out-of-home placement for 15 or more months of the most recent 22 months. Da'Niya was removed from Yolanda's home on June 26, 2020. The State filed the motion for termination of parental rights on February 9, 2022, and the termination trial was held in June 2022. Da'Niya remained out of the home since her removal in June 2020. At the time of trial, Da'Niya had been out of the home for 23 months. Thus, the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Because the State presented clear and convincing evidence that Da'Niya had been in an

out-of-home placement for 15 or more months of the most recent 22 months, statutory grounds for termination of Yolanda's parental rights exists.

*Best Interests and Unfitness.*

Yolanda assigns that the juvenile court erred in finding that it was in Da'Niya's best interests to terminate Yolanda's parental rights. In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. § 43-292; *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). Because the parent's right to raise his or her children is constitutionally protected, the court may terminate parental rights only when the State shows that the parent is unfit. *In re Interest of Isabel P. et al., supra*. There is a rebuttable presumption that the best interests of the children are served by having a relationship with their parent. *Id*. This presumption is overcome only when the State has proved that the parent is unfit. *Id*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id*.

Yolanda argues that she was not provided a sufficient opportunity to reunify with Da'Niya and thus termination of Yolanda's parental rights was not in Da'Niya's best interests. Yolanda asserts that her compliance with the dispositional plan was hindered by the lack of effort provided by case professionals.

We acknowledge that Yolanda's poverty and mental health created significant challenges in her case. However, the evidence clearly shows Yolanda's general lack of engagement throughout the case. Yolanda's caseworker testified extensively to the various efforts she undertook to keep in contact with Yolanda throughout the case, as well as Yolanda's pattern of disengaging from the case for months at a time. Yolanda was discharged from family support and multiple visitation agencies due to her failure to engage. Yolanda attended only one of her monthly family team meetings and only five sessions of parenting time during the duration of the entire case. On numerous occasions, Yolanda did not show up for visits with her daughter, despite arranging them with visitation workers. Once when Yolanda canceled a visit, Da'Niya was already in the car and became distraught at the news that she would not be seeing her mother. At the time of trial, Yolanda had not seen her daughter for 8 months.

Yolanda has not accomplished any part of her dispositional plan. She failed to access an IDI and individual therapy, despite telling her caseworker she knew how to access the services. There is no evidence that Yolanda received domestic violence education or participated in a support group. Little progress has been made in accessing a source of income or housing.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015). Based on the evidence presented, there has been minimal change in Yolanda's behavior over the course of the case, and based on her inability to engage with services or case professionals, she is unlikely to change in the future. The case plan goals have remained consistent throughout the case and have not been met, and there has been no improvement in Yolanda's ability to parent.

Yolanda also argues that failing to continue Da'Niya's placement with her aunt or to place Da'Niya with other relatives is not in her best interests. In its brief, the State argues that Da'Niya's May 2021 placement change is not relevant to the best interests' inquiry of the termination analysis, and we agree. Da'Niya's placement has no bearing as to whether Yolanda complied with the dispositional plan or meaningfully participated in services.

Finally, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). Da'Niya has been in foster care since June 2020. She deserves stability in her life and should not be suspended in foster care when Yolanda is unable to rehabilitate herself. Accordingly, we find there was clear and convincing evidence to show that Yolanda was unfit and that terminating her parental rights was in Da'Niya's best interests.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds for termination of Yolanda's parental rights existed under § 43-292(7) and that termination of her parental rights is in the best interests of Da'Niya. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.