In re Interest of M., a child under 18 years of age.
State of Nebraska, appellee, v. L.D., appellant.
453 N.W.2d 589

Filed April 6, 1990.   No. 89-774.

Joseph Lopez Wilson for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Grant, J.

This is an appeal by L.D. from an order of the separate juvenile court of Douglas County terminating L.D.'s parental rights with respect to her daughter M.

Appellant contends that the juvenile court erred (1) in finding that M. was a child within the meaning of Neb. Rev. Stat. § 43-292(6) (Reissue 1988) and (2) in finding that termination of the mother's parental rights was in M.'s best interests. We affirm.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual issues de novo on the record, but, where the evidence is in conflict, this court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990). An

order terminating parental rights must be supported by clear and convincing evidence and should be issued only when there is no reasonable alternative. *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987).

The record shows the following. M. was born to R.D. and L.D. out of wedlock on March 9, 1979. On July 28, 1986, Child Protective Services was informed that the child "was spanked every day. There were pinch marks that the child had had as being caused by pliers and there were statements that her father had been touching her in her private areas." Child Protective Services investigated the claims. On September 18, 1986, the Douglas County Attorney's office filed a petition in four counts in the separate juvenile court of Douglas County, alleging (1) that the child was born on March 9, 1979; (2) that the child was a juvenile within Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), in that she had been sexually molested by her father, and not protected from such molestation by her mother; (3) that her mother neglected the child as defined under § 43-292(2); and (4) that her father adversely affected the child as defined under § 43-292(4). The petition requested the juvenile court to make such orders as it deemed appropriate for the care and custody of the child and to terminate the parents' rights with respect to the child.

At a detention hearing October 20, 1986, the juvenile court placed the child in a foster home.

An adjudication hearing was held on July 6, 1987. Pursuant to an agreement between the parents, represented by counsel, and the State, the petition was amended to allege, in part:

## COUNT II

[M.] comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-247 (3a), Reissue of 1981 [sic], being under the age of eighteen years, and having natural parents, [L.D.] and [R.D.], natural parents of said child, who place said child in a situation which is dangerous to her life or limb, or injurious to the health or morals of said child, in that:

A. Said child has been subjected to sexual molestation by [R.D., her father].

B. [R.D.] was accused of sexually molesting [T.A.] in 1984 of which [L.D.] was fully cognizant; [L.D.] being aware of the sexual molestation allegations against [R.D.] failed to take adequate precautions to protect [M.] from [R.D.].

The parents, represented by counsel, entered a no contest plea to the petition as amended, after the court specifically advised them that such a plea would be an admission of the facts alleged against them in count II. The juvenile court found count II to be true and, at the request of the State pursuant to the agreement, dismissed counts III and IV and the prayer requesting termination of L.D.'s and R.D.'s parental rights with respect to M. The court ordered the child to remain in the temporary custody of the Nebraska Department of Social Services for foster home placement pursuant to a previous order.

At a dispositional hearing on August 28, 1987, the juvenile court ordered the parents to comply with a plan designed to correct the conditions leading to the court's previous finding that M. came within the definition of § 43-247(3)(a). The plan included the following: (1) that the child continue therapy, which would include the parents when deemed appropriate by the child's therapist; (2) that both the parents would attend weekly meetings of Parents United, a support group dealing with incest; (3) that the parents would obtain and maintain steady employment; (4) that the parents would cooperate with the caseworkers, including notifying the court within 48 hours of a change of employment or residence; (5) that the mother was granted reasonable rights of visitation as arranged by Child Protective Services; and (6) that the father would be granted reasonable rights of visitation when approved by the child's therapist.

At a review hearing on March 10, 1988, evidence was submitted concerning the parents' progress under the rehabilitation plan. From the time of the disposition hearing, the child attended therapy regularly with a therapist but was switched to a different therapist in late January 1988. The parents attended only a few therapy sessions with the first therapist during this time due to scheduling difficulties and the "need to deal more with [the child] on her personal issues." It

was noted at the hearing that the father's failure to admit he ever molested the child, or had any problems in that regard, was considered a barrier to the success of the plan. The father was told he would not be allowed to continue participating in Parents United if he persisted in his denial. The undisputed evidence indicated that the father's denial prevented him from being successfully treated, and the child could not be returned to the home of an untreated perpetrator.

The father's denial of any molestation of his child continued in spite of the father's admission of the alleged molestation in his formal plea before the juvenile court. The record does not disclose any request by either parent to withdraw their plea.

With reference to the mother, reports in evidence show that on January 7, 1988, the first therapist conducted a joint session with the child and her mother. At this session the child told her mother what the child's father had done to her, and the mother responded that she believed her and that she supported her.

As a result of the March 10 review hearing, the juvenile court renewed its prior order finding it was in the child's best interests to remain in foster care and ordered the continuation of the plan stated in the past order, except that therapy was to be conducted by the new therapist.

A second review hearing was held September 14, 1988. At this hearing it was reported that Parents United had barred the father from Parents United meetings beginning February 16, 1988. The initial reason for the exclusion was the father's failure to obtain a psychological evaluation, which was required by Parents United to determine whether he was treatable and whether he had psychotic tendencies. Upon receiving the psychological evaluation on February 29, 1988, the father was not allowed to participate in the meetings because he was diagnosed as an antisocial personality, which was interpreted to mean that he was not treatable. Parents United determined that the meetings would not benefit the father until he admitted to being a perpetrator.

The mother voluntarily ceased attending the meetings from February 23 to May 3, 1988, but then with encouragement resumed attendance. It was reported that the mother attended the meetings and made some progress by beginning to question

whether the child's father was telling the truth. However, on August 2, 1988, at a "Permanency Planning Review," the mother stated that she still did not believe that R.D. molested the child. The mother's position at this time was the opposite of the facts she had admitted in open court.

The father was informed on March 18, 1988, by the child's therapist that therapy was useless to him and would not be provided to him until he admitted he had a problem. With reference to the mother during the time period between the review hearings, the therapist reported that the mother did not consistently attend therapy, did not work on the issues, and did not totally believe that the father abused the child.

The reports by the Juvenile Probation Office and Child Protective Services concluded that the rehabilitation plan had failed because no progress had been made due to the father's denial of the molestation and the mother's dereliction in not believing her child. The therapist reported that the mother continued to question the child about the molestation, and the mother asked the child if it was not really someone other than her father who had molested her. The child remained consistent throughout her therapy in the allegation that her father had molested her.

At the conclusion of the September 14, 1988, hearing, the juvenile court continued the previous order, except the court specifically required the parents to attend therapy and amended the order to attend Parents United meetings to include the mother only.

On September 21, 1988, the State moved to terminate the mother's and father's parental rights with respect to the child. The motion stated, in part, that the child had been found to be a child within the meaning of § 43-247(3)(a) as far as her natural parents were concerned and that

> [M.] comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-292 (6), because reasonable efforts, under the direction of the Court have failed to correct the conditions leading to the aforementioned determination, to wit:
>
> . . . .
>
> B. After approximately two years of court involvement

and therapy, [the father] continues to deny that he molested said child, thereby stalemating any hopes of reuniting this family.

C. After approximately two years of court involvement and therapy, [the mother] continues to vacillate as to whether or not she believes that [the father] assaulted said child, thereby stalemating any hopes of reuniting this family.

The hearing on the motion was held on June 7, 1989. In December 1988, during the time between the filing of the petition to terminate and the hearing, the father moved to Florida, apparently to allow the mother to reunite with the child. Although the mother testified at the June 7 hearing that she had totally separated from the father, she admitted that she talked to the father at times and spoke with him the day before the June 7 hearing.

In January 1989, the mother expressed to the therapist that she believed the child's accusations and was prepared to tell the child that she believed her and would support her. The therapist brought the child and her mother together in a joint therapy session for this purpose. The therapist testified that the session failed because instead of showing support for the child, the mother became angry when the child stated that the father "simply had his fingers crossed when he told the Judge that he would move and that if she came home then Mom and Dad would get back together again and they would move to Florida and she was afraid of her dad." The mother did not respond to prompting by the therapist to support the child but, instead, stated that the child was being selfish and wanted to know the real reason the child did not want to come home. The therapist did not schedule any more joint sessions because she did not believe the mother was ready to take responsibility and not blame the child.

At the June 7, 1989, hearing, the therapist testified that in her expert opinion, "based upon two-and-a-half years and two therapists," the mother was not likely to ever have the capability of protecting the child from molestation by her father or others. The therapist testified that all models of incest rehabilitation require the nonoffending parent to believe that

the incest occurred. The therapist explained:

> [T]he very basis again is building a trusting relationship. The parent, in order to protect, must believe that first of all the child had been molested or had been hurt. Second of all, to offer that belief that they must believe there were certain signs and symptoms. Third, they must have a relationship - a trusting relationship with the child so if they don't read the signs of that there is a risk for remolestation and the child says that Daddy is molesting me again then she believes the child and then act to protect the child, none of which I believe [L.D.] has accomplished up to this time and it's been two-and-a-half years.

The therapist stated that this analysis also applies to the ability of the mother to protect the child from being molested by others, because the child would not feel comfortable enough to tell her mother about the abuse, would not believe that her mother would protect her from the abuser, and, in fact, the mother probably would not act to protect the child if she did tell her mother about the abuse.

The mother testified that she has believed that the father molested her daughter ever since January 1989, and stated that she wished to continue therapy, but with a different therapist. She had no specific complaint about the therapist but thought that "there ha[d] to be better therapists in Omaha than her."

In an order filed June 14, 1989, the juvenile court found that the allegations in the motion to terminate were true, that the child was a child within the meaning of § 43-292(6), and that it was in the child's best interests that the parental rights of L.D. and R.D. with respect to M. be terminated. Only the mother appeals from this order.

In her first assignment of error, the mother contends that the court incorrectly found that the child was a child within § 43-292(6). The mother contends that the State failed to prove by clear and convincing evidence that (1) the mother willfully failed to comply with reasonable provisions material to the rehabilitative objective, and (2) as a result of noncompliance, termination of parental rights is in the best interests of the child. The mother cites *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987), as requiring willful

noncompliance before parental rights may be terminated.

The mother's interpretation of the rule in that case is too broad. *In re Interest of J.S., A.C., and C.S., supra,* required proof of willful noncompliance only when termination resulted from "parental noncompliance with a court-ordered rehabilitative plan." *Id.* at 267, 417 N.W.2d at 158.

The condition of § 43-292(6) is satisfied if, "[f]ollowing a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination." We have interpreted the statute in the following manner:

> [T]he fact of participation in certain elements of the court-ordered plan does not necessarily prevent the court from entering an order of termination where the parent has made no progress toward rehabilitation. A parent is required not only to follow the plan of the court to rehabilitate herself but also to make reasonable efforts on her own to bring about rehabilitation.

*In re Interest of R.A.,* 226 Neb. 160, 170, 410 N.W.2d 110, 117 (1987). "Where a parent fails to rehabilitate herself within a reasonable period of time, the best interests of the child may require that a final disposition be made without delay." *Id.* at 167, 410 N.W.2d at 115.

In this case, the evidence shows that the mother has never sincerely believed that the child was molested by the father and is not, therefore, able to protect the child from further abuse. The petition alleging abuse by the father was filed in September 1986. By pleading no contest, with their attorney present and after inquiry by the court, each of the parents admitted the allegations within the petition that the father had assaulted the child and that the mother was aware since 1984 of allegations that the father had sexually abused another child. More than a full year after the petition was filed, the mother expressed to her first therapist that she believed the child, and participated in a joint session where she told the child she believed her. Shortly thereafter, the mother apparently changed her mind. The mother continued to question the child about whether she was really molested by someone else. On May 3, 1988, following an

unsupervised visit to the mother's home, the child displayed behaviors indicating molestation, and although the child would not talk about it, she indicated that she had physical contact with a man during the visit. In January 1989, the mother told the second therapist that she believed the child, but then her participation in the joint session indicated otherwise. In subsequent therapy sessions, the mother was unable to convince the therapist that she truly believed that the father had molested the child. At the June 7, 1989, hearing, the therapist testified that she did not believe the mother would be capable of protecting the child for the foreseeable future.

In view of the above circumstances, we must agree that after over 2$\frac{1}{2}$ years it is unlikely that the mother will ever come to sincerely believe that the child was molested by her father. The evidence is clear and convincing that the mother is not capable of protecting the child from her father or others. The rehabilitation plan failed in this instance because the mother was not amenable to treatment, not because the plan was not complied with or was unreasonable.

The child was found by the juvenile court to be within the meaning of § 43-247(3)(a) because her parents placed her "in a situation which is dangerous to her life or limb, or injurious to the health or morals of said child." As of June 14, 1989, the only progress made toward correcting this situation was that the father moved to Florida in December 1988. The evidence does not show us that the separation is permanent. We have determined that we cannot rely on such a separation to continue into the future. See, *In re Interest of Hollenbeck*, 212 Neb. 253, 322 N.W.2d 635 (1982); *In re Interest of Cook*, 208 Neb. 549, 304 N.W.2d 390 (1981). In our de novo review, we find that reasonable efforts have failed to correct the circumstances leading to the adjudication that the child is a child within the meaning of § 43-247(3)(a), and therefore the condition stated in § 43-292(6) exists.

Next, the mother contends that the juvenile court erred in finding that it was in the child's best interests to terminate her parental rights. With regard to this contention, she argues that she is treatable if given time and another therapist. She argues that there is no showing that the child's best interests require

termination without delay, and reminds us that termination is a last resort.

As discussed above, the evidence indicated that the mother has disregarded allegations of the father's child molestation since 1984. It is unlikely that the mother will ever sincerely believe the father molested the child, after vacillating for over 2½ years. We are convinced that it is not the therapist, but the mother that is the source of the failure of the rehabilitation plan. Termination is appropriate in this case because there does not appear to be a rehabilitation plan that will relieve the problems in the foreseeable future. " 'We will not gamble with the child's future; she cannot be made to await uncertain parental maturity.' " *State v. Souza-Spittler*, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979) (quoting *Long v. Long*, 255 N.W.2d 140 (Iowa 1977)). We find that it is in the child's best interests that her mother's parental rights be terminated. The judgment of the juvenile court is affirmed.

AFFIRMED.