Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2026 01:07 AM CDT

In re Interest of Bosileo D. et al.,
children under 18 years of age.

State of Nebraska, appellee, v.
Christopher J., appellant.

___ N.W.3d ___

Filed May 29, 2026.    No. S-24-749.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.
3. **Parental Rights.** Any one of the bases for termination codified in Neb. Rev. Stat. § 43-292 (Reissue 2016) can serve as the basis for termination.
4. **Parental Rights: Proof.** Under Neb. Rev. Stat. § 43-292 (Reissue 2016), it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the best interests of the child.
5. **Parental Rights.** Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.
6. **Constitutional Law: Due Process: Parental Rights: Proof.** The Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.
7. **Parental Rights: Presumptions: Proof.** An appellate court applies a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. That presumption can only be

overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right.

8. **Parental Rights: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being.

9. **Parental Rights.** The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.

10. **Juvenile Courts: Parental Rights.** Parental visitation rights, as a subject within the Nebraska Juvenile Code, are matters for judicial determination.

11. **Parental Rights.** When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights.

12. ____. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

Petition for further review from the Court of Appeals, Riedmann, Chief Judge, and Moore and Arterburn, Judges, on appeal thereto from the Separate Juvenile Court of Douglas County, Vernon Daniels, Judge. Judgment of Court of Appeals affirmed.

Brian J. Muench for appellant.

Shinelle Pattavina, Deputy Douglas County Attorney, and Sarah Alsup, Senior Certified Law Student, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Bergevin, J.

## I. INTRODUCTION

The Nebraska Court of Appeals affirmed the juvenile court's termination of Christopher J.'s parental rights to his three children.[1] On further review, Christopher assigns that the juvenile court erred in determining that termination of his parental

---

[1] See *In re Interest of Bosileo D. et al.*, No. A-24-749, 2025 WL 1693128 (Neb. App. June 17, 2025) (selected for posting to court website).

rights to the children was in their best interests. Specifically, he argues that the juvenile court improperly delegated its authority to determine visitation between the children and himself, and he argues that he made demonstrable progress toward rehabilitation. We affirm.

## II. BACKGROUND

Christopher is the natural father of Bosilio D., Amelius J., and Kayol J. (collectively the children). The natural mother of the children had her parental rights to each child terminated and is not involved in this consolidated appeal.

The children were removed from Christopher's care in January 2021—5 months after being returned to his care following the resolution of a previous juvenile case. That case started in 2016 and spanned just over 4 years. The 2021 removal was due to allegations made by the children that Christopher physically abused them, engaged in domestic violence in their presence, and abused substances.

### 1. Adjudication Phase

In July 2021, the juvenile court adjudicated the children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Subsequently, Christopher appealed from that 2021 adjudication order. He assigned that the juvenile court erred in finding the State had proved its allegations in the petition for adjudication by a preponderance of the evidence. The Court of Appeals affirmed the juvenile court's order in March 2022.[2]

While Christopher's appeal of the 2021 adjudication order was pending, the juvenile court ordered Christopher to participate in visitation with the children. Starting in February 2021, visitation occurred through video.

---

[2] See *In re Interest of Bosileo D. et al.*, No. A-21-627, 2022 WL 774657 (Neb. App. Mar. 15, 2022) (selected for posting to court website).

In September 2021, Christopher began in-person visits with the children once per week. According to one of the family caseworkers, the visits went "pretty well." These weekly in-person visits continued until the end of January 2022, when Christopher and Kayol had a "verbal disagreement" during a visit. After that, the Department of Health and Human Services (DHHS) reinstated video visitation, but the visits were "sporadic." Many times, the children did not attend the visits.

The record indicates that in August 2022, the juvenile court suspended visitation until Christopher completed a psychological evaluation with a parenting assessment. The record further indicates that prior to this time, DHHS had struggled to engage with Christopher because he was unwilling to accept DHHS' services other than visitation.

When Christopher met with a provider for his psychological evaluation in May 2023, the provider did not complete the evaluation due to Christopher's lack of trust in the provider and Christopher's refusal to sign a disclosure form for DHHS. Christopher met with another provider in June 2023, completed the evaluation, and signed the necessary disclosure form. The evaluation resulted in a recommendation for family therapy to be provided by one of the children's therapists.

The record indicates that the children's therapists provided letters to DHHS with recommendations for Christopher to follow before participating in family therapy with the children. According to a guardian ad litem report that the juvenile court received, the therapists' recommendations were that Christopher: (1) engage in individual therapy regularly, (2) sign a release of information with the children's therapists so that they may collaborate with Christopher's therapist, and (3) take responsibility for the abuse the children witnessed or experienced while in Christopher's care. The children's therapists noted that they would consider the children's readiness to meet with Christopher to determine if family therapy could be utilized. Visitation never resumed after August 2022.

## 2. Termination of Parental Rights

In September 2023, the State filed a motion to terminate Christopher's parental rights to the children. The State alleged that (1) Christopher had substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection[3]; (2) reasonable efforts to preserve and reunify the family, under the direction of the court, had failed to correct the conditions leading to the determination[4]; (3) the children had been in an out-of-home placement for 15 or more months of the most recent 22 months[5]; (4) Christopher had subjected the children to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse[6]; and (5) termination was in the children's best interests.

We note that the parties provided a limited appellate record. The record suggests that the proceedings held on the State's petition to terminate Christopher's parental rights took place over the course of 5 days in 2024: March 19 and 25, and July 22, 23, and 25. However, Christopher did not request the bill of exceptions for the proceedings in March, and he erroneously requested the bill of exceptions for July 26 instead of July 25.

Christopher filed an amended request to include the March 2024 hearing dates and the July 25, 2024, hearing date. The Court of Appeals rejected Christopher's request because of his failure to contemporaneously file a motion for leave.[7]

Neither is the State without blame. The State did not supplement the record, yet it cited to evidence not included in the record in its appellate briefing.[8] This situation leaves us with

---

[3] See Neb. Rev. Stat. § 43-292(2) (Reissue 2016).

[4] See § 43-292(6).

[5] See § 43-292(7).

[6] See § 43-292(9).

[7] See Neb. Ct. R. App. P. § 2-105(B)(2)(f) (rev. 2023).

[8] See § 2-105(B)(2)(e).

various uncertainties about the timeline of events and without several pieces of substantive evidence that would have been helpful in our analysis.

We remind practitioners that, as authorized by statute,[9] the various procedures for compiling, certifying, and amending a bill of exceptions are detailed in § 2-105.[10]

The limited record before us shows that on July 22 and 23, 2024, the juvenile court heard testimony related to the State's motion to terminate Christopher's parental rights. The State elicited testimony from the provider who unsuccessfully attempted an evaluation of Christopher, the family's initial assessment worker, and a caseworker who worked with the family from July 2021 to December 2023. The testimony of the family's initial assessment worker and caseworker concerned Christopher's progress toward rehabilitation during the case.

The initial assessment worker testified that the children reported Christopher had physically abused them and that they were concerned about returning to his home. The caseworker testified that the children refused to have in-person visitation with Christopher because they were afraid of him. She also testified that in the fall of 2023, the children's therapists still did not believe the children were ready to resume visitation with Christopher. Both the assessment worker and the caseworker testified that throughout the case, Christopher refused to accept the validity of the underlying reasons for the children's removal.

The evidence surrounding Christopher's cooperation with the juvenile court and compliance with his case plan is conflicting. The caseworker testified that Christopher complied with all court orders. However, her court reports indicate that

---

[9] See Neb. Rev. Stat. § 25-1140 (Reissue 2016).

[10] See *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021), *modified on denial of rehearing* 309 Neb. 399, 959 N.W.2d 818.

in February 2023, Christopher was difficult to engage with, unwilling to accept DHHS' services, and failed to provide documentation verifying his employment status.

Following the termination hearing, the juvenile court entered an order terminating Christopher's parental rights to the children. The court found that the State had established by clear and convincing evidence a statutory basis for termination under § 43-292(2), (6), (7), and (9) and that it was in the best interests of the children to have Christopher's parental rights terminated. Christopher timely appealed.

### 3. Court of Appeals

On appeal, Christopher assigned that the juvenile court erred in finding that termination of his parental rights was in the children's best interests. The Court of Appeals found that the record clearly and convincingly established a statutory basis for termination of Christopher's parental rights to the children and that termination of his parental rights was in the children's best interests.[11]

First, as a statutory basis for terminating Christopher's parental rights, the Court of Appeals determined the State met its burden of proof in showing that the children were in an out-of-home placement for 15 or more months of the most recent 22 months.[12] The Court of Appeals went on to find that termination of Christopher's parental rights was in the best interests of the children for three reasons: (1) The children had reported physical abuse, were afraid of Christopher, and were still unready to resume visitations; (2) Christopher continued to refuse to take any accountability for the children's displacement, which evidenced an unwillingness or inability to rehabilitate within a reasonable amount of time[13]; and (3)

---

[11] See *In re Interest of Bosileo D. et al., supra* note 1.

[12] See § 43-292(7).

[13] See, e.g., *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

the children had been in out-of-home placements for over 4 years.[14]

Christopher timely petitioned for further review.

## III. ASSIGNMENT OF ERROR

On further review, Christopher assigns that the Court of Appeals erred by concluding that termination of Christopher's parental rights was in the children's best interests.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[15] When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.[16]

## V. ANALYSIS

### 1. Statutory Basis

[3] We first consider whether there is a statutory basis for termination of Christopher's parental rights to the children. Christopher does not dispute that a statutory basis exists. He concedes that the children have been in an out-of-home placement for 15 or more months of the most recent 22 months.[17] We agree and find that the State proved the same by clear and convincing evidence. Since any one of the bases for termination codified in § 43-292 can serve as the basis for termination, we need not consider the sufficiency of the evidence concerning the State's other statutory bases for termination.[18]

---

[14] See, e.g., *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[15] *In re Interest of Joel T. et al., ante* p. 106, 32 N.W.3d 640 (2026).

[16] *Id.*

[17] See § 43-292(7).

[18] See *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

We next consider whether termination of Christopher's parental rights is in the children's best interests.

## 2. Best Interests

[4-6] Under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the best interests of the child.[19] Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.[20] In this regard, we have emphasized that the Due Process Clause of the U.S. Constitution would be offended ""'"[i]f a [s]tate were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness."'"[21]

[7-9] We apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent.[22] That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right.[23] In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being.[24] The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.[25]

---

[19] *In re Interest of Joel T. et al., supra* note 15.

[20] *Id.*

[21] *Id.* at 115, 32 N.W.3d at 647 (quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

Christopher argues that it was error for the Court of Appeals to find that termination of his parental rights to the children was in their best interests. Specifically, he argues that the juvenile court deprived him of any opportunity to rehabilitate his relationship with his children because it delegated its duty of determining visitation to the children and their therapists. He also argues that he made demonstrable progress in his court-ordered plan for rehabilitation. We address his arguments in turn.

### (a) No Improper Delegation to Determine Visitation

[10] Parental visitation rights, as a subject within the Nebraska Juvenile Code, are matters for judicial determination.[26] In a case governed by the Nebraska Juvenile Code, *In re Interest of C.A.*,[27] we considered whether a juvenile court improperly delegated its authority to determine parental visitation. In that case, we found no improper delegation, and we reach the same conclusion here.

Visitation between Christopher and the children was suspended by the juvenile court in August 2022. Although the caseworker's testimony established that the therapists did not recommend resuming visitation, the record is devoid of a court order authorizing the therapists to determine whether visitation would occur.[28] Christoper's argument that the court improperly delegated decisionmaking about visitation to the therapists is refuted by the record.

---

[26] *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990).

[27] *Id*.

[28] See *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980) (unlawful delegation when court order authorized psychologist to effectively determine visitation), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

### (b) No Demonstrable Progress

[11] As the Court of Appeals noted, from the beginning of the family's previous case in 2016 to the termination proceedings in 2024, the children have been under the juvenile court's jurisdiction for all but 5 months.[29] During this time, Christopher has refused to recognize the circumstances that led to the children's removal from his care or their continued concerns about interacting with him. When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights.[30]

We recognize that Christopher has cooperated with court orders and certain aspects of his case plan. However, his refusal to acknowledge the children's reports of physical abuse in the past and their concerns about returning to his home demonstrates parental unfitness and a lack of amenability to rehabilitation.[31] According to the caseworker, over a year after the court suspended visitation in August 2022, the children's therapists still did not believe the children were ready to resume visitation with Christopher.

[12] The circumstances behind the children's adjudication, and the children's continued concerns about interacting with Christopher highlighted a problem in their relationship. Christopher has had several years to improve his relationship with his children, and he has seemingly refused or been unable to do so. We will not continue to suspend the children in foster care to await Christopher's uncertain parental maturity.[32]

---

[29] See *In re Interest of Bosileo D. et al., supra* note 1.

[30] *In re Interest of Joel T. et al., supra* note 15.

[31] See *In re Interest of M.*, 235 Neb. 61, 453 N.W.2d 589 (1990) (finding termination of parental rights appropriate when mother disregarded allegations of father's child molestation during juvenile case spanning over 2 years).

[32] See *In re Interest of Octavio B. et al., supra* note 14.

Based on the record, we find that termination of Christopher's parental rights is in the children's best interests.

## VI. CONCLUSION

The Court of Appeals did not err in finding a statutory basis for termination of Christopher's parental rights or in finding that termination was in the best interests of the children. Additionally, we find no improper delegation by the juvenile court of its authority to determine Christopher's visitation rights with the children. Therefore, we affirm the Court of Appeals' affirmance of the juvenile court's order.

AFFIRMED.